**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cr-149 |
| | ) | |
| MILLARD WILLIAMS, | ) | Judge Sharon Johnson Coleman |
| MICHELLE JAMISON, and | ) | |
| ROLAND BLACK, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants Millard Williams, Michelle Jamison, and Roland Black were charged with drug-related offenses in a March 2018 indictment. These defendants have moved to dismiss counts one, two, and four of that indictment, pursuant to the Due Process Clause of the Fifth Amendment, Federal Rule of Criminal Procedure 12, and the Court's inherent supervisory powers. For the reasons discussed below, the motion is denied.

**Background**

On March 7, 2018, a grand jury returned an eight-count indictment charging four defendants, including Williams, Jamison, and Black, with drug-related offenses. Williams and Jamison were named in Count One, which charged them with conspiracy to possess with intent to distribute and distribution of "100 grams or more of a mixture and substance containing a detectable amount of furanyl fentanyl, an analogue of fentanyl [], a Schedule II Controlled Substance," in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Dkt. 1 at 1.) Count Two charged Williams with possession with intent to distribute "100 grams or more of a mixture and substance containing a detectable amount of furanyl fentanyl, an analogue of fentanyl [], a Schedule II Controlled Substance," in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Dkt. 1 at 2.) Count Four

1

charged Black with possession with intent to distribute "100 grams or more of a mixture and substance containing a detectable amount of furanyl fentanyl, an analogue of fentanyl [], a Schedule II Controlled Substance," in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Dkt. 1 at 4.) Each defendant faces a mandatory minimum 10-year prison term if convicted on these counts. *See* 21 U.S.C. § 841(b)(1)(A)(vi) (in the case of a violation of section 841(a) involving 100 grams or more of a mixture or substance containing a detectable amount of any analogue of [fentanyl], such person shall be sentenced to a term of imprisonment which may not be less than 10 years).

Black's trial was set for December 3, 2019. In late November, the parties argued motions in limine, and the Court issued rulings on the motions. At the final pretrial conference on December 2, a disagreement arose between the parties concerning a stipulation about whether furanyl fentanyl is an analogue of fentanyl. Black advised the Court that he was withdrawing his motion to bifurcate the trial and that he would be moving to dismiss the indictment. Williams and Black thereafter filed a Motion to Dismiss Counts One, Two, and Four of the Indictment. Jamison has joined her co-defendants' motion. The Government opposes the motion.

## Legal Standard

Federal Rule of Criminal Procedure 12(b)(3)(B) provides that a criminal defendant may, prior to trial, move to dismiss an indictment as defective. To address this motion, the Court first looks to the Sixth Amendment to the Constitution, which sets out that criminal defendants "shall enjoy. . .the right to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. In addition, federal criminal procedure rules provide that an indictment must include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is constitutionally sufficient and satisfies [Rule 7(c)(1)] if it states the elements of the crime charged, informs the defendant of the nature of the charge so he may prepare a defense, and enables the defendant to plead the judgment as a bar against future

2

prosecutions for the same offense." *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997)
(citing *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L.Ed. 590 (1974)).

The Supreme Court has long held that "[a]n indictment returned by a legally constituted and
unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to
call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S. Ct. 406,
100 L.Ed. 397 (1956); *see also Kaley v. United States*, 571 U.S. 320, 328, 134 S. Ct. 1090, 188 L.Ed. 2d
46 (2014). A motion to dismiss an indictment does not challenge the strength of the Government's
case or the sufficiency of the evidence. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009).
Rather, when ruling on a motion to dismiss, the Court must determine "whether it's possible to view
the conduct alleged" as constituting the crime charged. *Id.* "Indictments are reviewed on a practical
basis and in their entirety, rather than in a hypertechnical manner." *United States v. Smith*, 230 F.3d
300, 305 (7th Cir. 2000) (citation omitted) (internal quotation marks omitted).

**Discussion**

Defendants present two main arguments urging dismissal of counts one, two, and four of
the indictment: (1) that the Government presented inaccurate and misleading evidence to the grand
jury, which violated defendants' due process rights; and (2) that the definition of "analogue" under
section 841(b) is unconstitutionally vague as applied in this case. The Government contends that
the motion should be denied because: dismissal is not the appropriate remedy, furanyl fentanyl is an
"analogue" of fentanyl under section 841(b) for the purposes of determining sentences for the
charged offenses, defendants' vagueness arguments ignore the plain meaning of the term "analogue
of fentanyl," and the grand jury did not receive inaccurate or misleading information as to testimony
stating that furanyl fentanyl is an analogue of fentanyl.

*Statutory provisions and the scheduling of furanyl fentanyl*

Section 841(a)(1) of Title 21, a provision in the Controlled Substances Act (CSA) makes it "unlawful for any person knowingly or intentionally…to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." The CSA sets forth an enhanced penalty for possession with intent to distribute (or distribution of) "10 grams or more of a mixture or substance containing a detectable amount of any analogue of [fentanyl]." 21 U.S.C. § 841(b)(1)(B)(vi). Fentanyl is listed as a Schedule II controlled substance in 21 U.S.C. § 812. The United States Drug Enforcement Administration (DEA) defines Schedule I drugs as "drugs with no currently accepted medical use and a high potential for abuse," while Schedule II drugs are "dangerous" drugs "with a high potential for abuse, with use potentially leading to severe psychological or physical dependence."[1,2]

The term "controlled substance analogue" is statutorily defined, as relevant here, as a substance that is not a controlled substance but is a substance that has a chemical structure substantially similar to the chemical structure of a controlled substance in Schedule I or II. *See* 21 U.S.C. § 802(32)(A)(i), (C)(i). The CSA provides that "a controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I." 21 U.S.C. § 813(a). Thus, under the CSA, the term "controlled substance analogue" is distinguishable from and expressly excludes controlled substances.

In February 2018, the DEA issued a two-year temporary scheduling order, which categorized fentanyl-related substances into Schedule I. *See* 83 FR 5188-01. The order further stated that ". . .criminal sanctions applicable to schedule I controlled substances will be imposed on

---

[1] *See Drug Scheduling,* https://www.dea.gov/drug-scheduling, last accessed July 2, 2020.
[2] Substances that present "the greatest risk to the public health and safety are subject to the most stringent controls and sanctions. A lower schedule number corresponds to greater restrictions, so substances in Schedule I are subject to the strictest controls…." *The Controlled Substances Act (CSA): A Legal Overview for the 116th Congress,* https://crsreports.congress.gov/product/pdf/R/R45948, last accessed July 3, 2020.

persons who handle (manufacture, distribute, reverse distribute, import, export, engage in research, conduct instructional activities or chemical analysis, or possess), or propose to handle fentanyl-related substances." *Id.* In November 2018, the DEA issued a final order that maintained the placement of furanyl fentanyl as a Schedule I controlled substance, noting that public health officials had been encountering furanyl fentanyl since 2015 and that the adverse health effects and outcomes were demonstrated by an increase of fatal overdose cases. *See* 21 CFR Part 1308, Docket No. DEA-490. Defendants who are convicted for drug-trafficking offenses that involve analogues of fentanyl face increased penalties under section 841(b)(1)(A)(vi). This matter is before the Court because section 802(32) does not define the term "analogue of fentanyl," while defining "controlled substance analogue."

*The Government's grand jury presentation*

Defendants contend that the Government purposefully charged furanyl fentanyl as an analogue of fentanyl to trigger the 10-year minimum prison term mandated in section 841(b)(1)(A)(vi) and, in doing so, presented misleading evidence to the grand jury that furanyl fentanyl is an analogue of fentanyl. At the grand jury proceedings, a Government attorney asked the witness, a Department of Homeland Security special agent, whether furanyl fentanyl is "an analogue Fentanyl, which is a Schedule II controlled substance," to which the witness responded "Yes, it is." Defendants argue that furanyl fentanyl cannot be an analogue of fentanyl under section 841(b) because furanyl fentanyl has been scheduled as a controlled substance. They further argue that the definition of a controlled substance analogue in section 802(32)does not include any substance already scheduled as a controlled substance.

After careful consideration of the parties' arguments, the Court largely adopts the legislative analysis employed by the district court in *United States v. McCray* in reaching its conclusion that section 841(b)(1) permitted the government to proceed to trial to prove in that case that butyryl

5

fentanyl is an analogue of fentanyl. *See* 346 F.Supp.3d 363, 370 (W.D.N.Y. 2018). Based on that analysis and for the additional matter-specific reasons herein, the Court concludes that the Government did not present inaccurate or misleading information to the grand jury and that dismissal of the indictment is not proper.

In reaching this conclusion, the Court turns to the relevant statutory provisions delineated above.[3] Because the CSA does not expressly define the terms "analogue" and "analogue of fentanyl," the Court must determine the ordinary meaning of these terms. *See Encino Motorcars, LLC* v. *Navarro*, 138 S.Ct. 1134, 1140, 200 L.Ed.2d 433 (2018); *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001) ("Statutory terms or words will be construed according to their ordinary, common meaning unless these are defined by the statute or the statutory context requires a different definition."); *see also Chapman v. United States*, 500 U.S. 453, 461-62, 111 S.Ct. 1919, 1925-26 (1991) (terms that are undefined in the CSA and do not have any established common-law meaning must be given their ordinary meaning); *Am. Tobacco Co.* v. *Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) (statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible).

As the *McCray* court pointed out, "[in] the chemistry context relevant here, the term analogue means 'a chemical compound structurally similar to another but differing often by a single element of the same valence and group of the periodic table as the element it replaces.'" *McCray*, 346 F.Supp.3d at 367 (quoting *Analogue*, Webster's New Collegiate Dictionary (1985)). This Court agrees, based on this definition, that there is a plain and ordinary meaning of the term "analogue" and is convinced that under this meaning an analogue of fentanyl is any substance with a structurally similar chemical compound to fentanyl. *See United States v. Jones*, 2019 WL 6311501, at *5 (N.D.

---

[3]The parties discuss at length in their briefing the legislative history of the relevant statutes. The Court will not rehash those arguments here except to state that it adopts the *McCray* court's discussion of the legislative history of these congressional acts. *See McCray*, 346 F.Supp.3d at 369.

Ohio, Nov. 25, 2019) ("In fact, the Court agrees with the court in *McCray*, the case cited by Jones in support of his claim, that the definition [of fentanyl analogue] clearly refers to any substance structurally similar to fentanyl.").[4]

Although the arguments may seem somewhat circular, upon review of the CSA's enhanced penalties, the Court finds that although furanyl fentanyl is not a controlled substance analogue in keeping with the facts of this case, it is an analogue of fentanyl. Thus, the CSA does not preclude a controlled substance such as furanyl fentanyl from being charged as an "analogue of fentanyl" under section 841(b)(1)(B)(vi), *see McCray,* 346 F.Supp.3d. at 368 ("[t]the defendant's interpretation renders meaningless the enhanced penalty provisions for fentanyl analogues that have been scheduled as controlled substances").[5] The Court thus holds that the Government did not present misleading testimony to the grand jury when its agent stated that furanyl fentanyl is an analogue of fentanyl. Further, the Government was justified in presenting this information to the grand jury under *Apprendi v. New Jersey,* 530 U.S. 466 (2000). At the trial of this case, a jury will be required to make a factual determination as to whether the drugs at issue were furanyl fentanyl, thereby triggering the mandatory ten-year minimum term the Court must apply at sentencing. *See United States v. Allington*, 13 Fed. Appx. 402, 404 (7th Cir. 2001) (*Apprendi's* mandate that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt").

---

[4]The Court notes that the United States Sentencing Commission Guidelines Manual defines "fentanyl analogue" as "any substance (including any salt, isomer, or salt or isomer thereof), whether a controlled substance or not, that has a chemical structure that is similar to fentanyl." USSG § 2D1.1(c), Note (J). The Guidelines also provide that, unless otherwise defined, the term "analogue" has the same meaning as "controlled substance analogue" in 21 U.S.C. § 802(32). *See* USSG § 2D1.1, comment. (n.6.).

[5]These enhanced penalties are understandable given references in the legislative record about the dangerousness of fentanyl analogues. *See, e.g.*, House Judiciary Committee Report accompanying H.R. 5246, H.R. Rept. 99-848, Part 1 at 4 ("Designer drugs such as the fentanyl analogues have resulted in over one hundred drug overdoses because in some cases they are as much as 3000 times more potent than heroin.").

*Vagueness challenge*

Next, the Court sees little merit in defendants' arguments that the term "analogue of fentanyl" is vague as applied to them by the Government in this case. "A statute is unconstitutionally vague if it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United States v. Burrows*, 905 F.3d 1061, 1063 (7th Cir. 2018) (internal quotations and citation omitted); *see also United States v. Cook*, 914 F.3d 545, 550 (7th Cir. 2019) (a litigant challenging the statute ordinarily must show that it is vague as applied to him; if the statute undoubtedly applies to his conduct, he will not be heard to argue that the statute is vague as to one or more hypothetical scenarios); *United States v. Coscia*, 866 F.3d 782, 794 (7th Cir. 2017) (vagueness challenges to statutes that do not involve First Amendment interests are examined in light of the facts of the case at hand; the defendant must prove that *his* prosecution arose from arbitrary enforcement) (internal citations omitted) (emphasis in original).

Again, the penalty section of the CSA states that a person convicted of violating section 841(a) with conduct involving 100 grams or more of any analogue of fentanyl is subject to a mandatory 10-year minimum prison term. 21 U.S.C. § 841(b)(1)(A)(vi). The Court finds that the statute provides ordinary persons such as defendants fair notice of the punishable conduct and likewise, that persons of "common intelligence" would be on notice that furanyl fentanyl is an analogue of fentanyl. *United States v. Washam*, 312 F.3d 926, 930 (8th Cir. 2002) (concluding that defendant had notice that his conduct was illegal, could not claim that the definition of a controlled substance analogue in section 802(32) was void for vagueness as applied to him, and that a person of common intelligence had sufficient notice under the statute that the substance was a controlled substance analogue). Although the Court finds that dismissal of the indictment is not appropriate, the issues that have arisen in the context of the motion to dismiss may be relevant at the sentencing phase of this case should defendants be convicted. *See Chapman*, 500 U.S. at 467-68 (rejecting

defendant's argument that the term "mixture or substance" containing LSD in § 841 was constitutionally vague and stating that "whatever debate there is would center around the appropriate sentence and not the criminality of the conduct.").

It is important to note that "prosecutors have wide discretion over whether, how, and when to bring a case," and the fact that the Government charged Williams, Black, and Jamison with offenses under a statute that attaches enhanced penalties if a conviction is secured does not mean that the statute at issue here is unconstitutional as applied to defendants. *See United States v. Segal*, 495 F.3d 826, 833 (7th Cir. 2007); *see also United States v. Smith*, 502 F.3d 680, 690 (7th Cir. 2007) ("Prosecutors always have discretion to decide which charges to bring, and this discretion extends to charges that carry enhanced statutory maximum penalties."). The Court is not espousing that prosecutorial discretion is unfettered but acknowledges that prosecutors have the discretion to bring charges based on statutes as they are currently enacted.[6]

Finally, under *Apprendi* and its progeny, "any factual determination that increases the statutory mandatory minimum term to which a defendant is subject . . . must be charged in the indictment and proven beyond reasonable doubt to the factfinder." *Davis v. United States*, 817 F.3d 319, 326 (7th Cir. 2016). "In drug sentencing cases, *Apprendi* requires a drug type and amount sufficient to trigger the higher statutory maximum of § 841(b)(1)(A) or (B) be charged in the indictment and found by the jury." *United States v. Macedo*, 406 F.3d 778, 786 (7th Cir. 2005) (internal quotations and citation omitted). The indictment in this case named furanyl fentanyl as the drug type and charged an amount of 100 grams or more of that drug. Viewing the indictment practically and in its entirety, *see Smith*, 230 F.3d at 305, the Court finds that it provided each defendant with

---

[6]The Court acknowledges that "by defining 'controlled substance analogue' without defining 'analogue,' the drafters created a thorny definitional problem." *McCray*, 346 F.Supp.3d at 365. However, the role of this Court is to interpret laws as they stand, even where their clarity can be called into question, as "it is the duty of the legislative branch to make the law." *INTL FCStone Fin. Inc. v. Jacobson*, 950 F.3d 491, 499 (7th Cir. 2020).

notice of the drug type and alleged amount and is therefore constitutionally sufficient. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 108, 127 S.Ct. 782, 788 (2007) (one of the constitutional requirements for an indictment is "first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend").

**Conclusion**

For the foregoing reasons, defendants' motion to dismiss counts one, two, and four of the indictment [170] is denied.

**IT IS SO ORDERED.**

Date: 7/7/2020

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge